1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   REBECCA A. HULL  Bar No. 99802
2  CARI A. COHORN  Bar No. 249056
   One Market Plaza
3  Steuart Tower, 8th Floor
   San Francisco, California 94105
4  Telephone: (415) 781-7900
   Facsimile: (415) 781-2635
5
   Attorneys for Defendant
6  METROPOLITAN LIFE INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL TOUSSAINT, MATTHEW TOUSSAINT, aka MATTHEW T. TOUSSAINT, and NICOLE TOUSSAINT, aka NICHOLE T. TOUSSAINT,<br><br>   Plaintiff,<br><br>   v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, LIFE INSURANCE COMPANY OF NORTH AMERICA AND CHARLES SCHWAB & CO., INC. AND DOES 1-25, INCLUSIVE,<br><br>   Defendant.<br><br>AND RELATED CROSS-ACTIONS | CASE NO. C07-03467 MJJ<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>DATE:  OCTOBER 16, 2007<br>TIME:  2:00 P.M.<br>DEPT:  11, 19TH FLOOR<br>JUDGE: HON. MARTIN J. JENKINS |

1. <u>Jurisdiction and Service</u>:

   This matter was originated by Plaintiffs in the Superior Court of California, County of Contra Costa, as Case No.: C07-01052 in the good faith belief that the primary issues pertain to tortious misrepresentations, concealment and equitable claims of promissory estoppel rather than claims governed by ERISA.

2. <u>Facts</u>:

   A. <u>Plaintiffs' Facts</u>

1   The Plaintiffs' version of facts are set forth in detail in their Complaint which is
2   incorporated herein by this reference.  PETER J. SABECKY had been a disabled employee of
3   Charles Schwab & Company, Inc. and through his employer, despite his disability, he was entitled
4   at various times to life insurance benefits from Metropolitan Life Insurance Company and Life
5   Insurance Company of North America.  In June 2002, PETER J. SABECKY divorced
6   REBECCA GONZALES.

7   Thereafter, the diabetic disability of PETER J. SABECKY started to intensify as did his
8   physical problems.  On January 8, 2003 PETER J. SABECKY filled-out and completed a Schwab
9   Plan Retirement Savings & Investment Plan Beneficiary Designation form which had been
10  provided to him by his former employer, Defendant CHARLES SCHWAB & COMPANY, INC.
11  Said form, attached to the Complaint as Exhibit "B", clearly designates the three (3) Plaintiffs
12  herein as the beneficiaries under all related policies.  Said form also confirms, correctly, that
13  PETER J. SABECKY had no spouse at that time and was a single man.

14  In addition, on that same date, January 8, 2003, PETER J. SABECKY signed a form for
15  Defendant MET LIFE also naming the Plaintiffs, and each of them, as his group policy
16  beneficiary.  A copy of this form is also attached to the Complaint as Exhibit "B".  These forms
17  were duly completed and delivered.  At no time did any Defendant contact PETER J. SABECKY
18  nor any of the Plaintiffs and advise that the forms were incomplete, misdirected, that the company
19  providing the life insurance coverage had changed or in any way give PETER J. SABECKY, or
20  his intended beneficiaries, any notice whatsoever that the beneficiary change had not been
21  received and properly done.

22  In fact, Defendants MET LIFE and CHARLES SCHWAB & COMPANY, INC. sent the
23  Plaintiffs, and each of them, personal letters on May 18, 2005, after PETER J. SABECKY passed
24  away.  Said letters are collectively attached to the Complaint as Exhibit "A" and are incorporated
25  herein by this reference.  Those letters, as to each of the Plaintiffs, clearly states as follows:

26

27   *The last designation on file indicates you are the*
    *beneficiary designated to receive proceeds of the*
28   *group term life insurance policy that was in effect*
    *for Peter J. Sabecky... According to our records,*

*your anticipated claim amount is $23,200.*

It should be noted that the $23,200 amount was represented to Daniel Toussaint whereas Nicole Toussaint and Mathew Toussaint were promised $17,400 each, respectively. These sums total $58,000.00.

In response, the Plaintiffs, who were each orphaned children of the decedent PETER J. SABECKY's predeceased sister, justifiably incurred expenses in anticipation of the represented proceeds.

Despite the unambiguous written election to change beneficiaries subsequent to a dissolution and despite the acknowledgment by Defendants MET LIFE and CHARLES SCHWAB & COMPANY, INC. that said beneficiaries had been changed and notice was received, the Plaintiffs are still inexplicably without their represented payment amounts totaling $58,000.00.

B.   Defendants' Facts

1.   Defendant Life Insurance Company of North America

Mr. Peter J. Sabecky ("Mr. Sabecky") was employed by Charles Schwab & Company ("Schwab"). At the outset of his employment, defendant Life Insurance Company of North America ("LINA") provided group disability and life insurance ("the Policy") to participants of the Charles Schwab employee benefit plan ("the plan"). By virtue of his employment with Schwab, Mr. Sabecky was a participant in the plan and qualified for the coverages under the policy. In his paperwork that he provided when he signed up for the plan, Mr. Sabecky designated his wife Rebecca Gonzales ("Ms. Gonzales") as the primary beneficiary for the life insurance benefit under the Policy.

Mr. Sabecky became disabled from his job at Schwab and began receiving disability benefits from LINA under the Policy. Mr. Sabecky remained covered under the Policy throughout the entire duration of his disability. Mr. Sabecky died while still on disability and therefore still covered under the policy. When LINA learned of his death, the company determined, based on the documentation that had been filled out and signed by Mr. Sabecky, that Ms. Gonzales was the primary beneficiary for the life insurance benefit under the Policy. LINA

1  located Ms. Gonzales and provided the claim forms to her.  She submitted the completed claim
2  forms and was paid the benefit by LINA.

3  After the benefits were paid to Ms. Gonzales and the claim closed, the plaintiffs in this
4  action contacted LINA and stated that they were the proper beneficiaries.  However, the benefit
5  already had been paid to Ms. Gonzales.  Moreover, the beneficiary designation signed by Mr.
6  Sabecky stated that Ms. Gonzales was the beneficiary and the Policy provides that the benefit
7  must be paid to the designated beneficiary.

8      2.    Defendant Metropolitan Life Insurance Company

9  Metropolitan Life Insurance Company ("MetLife") began funding benefits of the life
10 insurance coverage provided to participants of the Charles Schwab & Co. ("Schwab") employee
11 benefit plan ("Plan"), which had previously been funded by LINA, in approximately January 1994.
12 Mr. Sabecky became disabled on or around May 27, 1992, however, and as such remained
13 covered by the LINA policy until his death.  Thus, at no time did the MetLife group policy fund
14 the life insurance coverage afforded to Mr. Sabecky by the Schwab Plan.

15 MetLife's files include a beneficiary designation form dated August 20, 1998, designating
16 Ms. Gonzales as beneficiary, and signed by Mr. Sabecky, although it is unclear how it came to
17 MetLife.  MetLife acknowledged receipt of that form by letter dated September 3, 1998.

18 On May 24, 2005, MetLife received from Schwab an Employer's Statement and related
19 claim documents, including a January 8, 2003, beneficiary designation form listing the plaintiffs as
20 the beneficiaries.  MetLife immediately sent out a form letter to the plaintiffs acknowledging its
21 receipt of the paperwork from Schwab, and began exploring the relevant administrative history.
22 In late May and early June 2005, Plaintiffs submitted their Claimant's Statement forms to
23 MetLife.  By June 27, 2005, however, MetLife employees had discovered that Mr. Sabecky had
24 become disabled before MetLife began funding the Schwab employee benefit plan.  As LINA was
25 the appropriate insurer, the matter was left to LINA.  It now appears, however, that LINA was
26 not provided with the most recent beneficiary form, and therefore paid Ms. Gonzales.

27 3.    <u>Legal Issues</u>:
28     a.    <u>Plaintiff's Position</u>

There's a dispute as to whether ERISA applies to exclude the claims of the Plaintiffs. The Plaintiffs contend that their claim lies in fraudulent misrepresentation, concealment and promissory estoppel, as set forth in their Complaint.

    b.    Defendant's Position

Plaintiff's common law claims are preempted by ERISA. ERISA's civil enforcement provisions provide an exclusive remedy for violations related to employee welfare benefit plans, preempting common law causes of action for breach of contract. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987); *Bast v. Prudential Ins. Co. of America*, 150 F.3d 1003 (9th Cir. 1998).

    1.    LINA's statement

Plaintiff has no standing to pursue a claim for damages under ERISA.

Under the language in the group policy issued by LINA, and under ERISA, LINA was required to pay the life insurance benefit to the beneficiary designated by Mr. Sabecky in the plan documents.

In addition to the fact that plaintiff as no claim under ERISA, LINA also is discharged from any liability in this action pursuant to Insurance Code section 10172 as it is undisputed that LINA did not have notice of plaintiffs' claim at the time it made the payment to Ms. Gonzales

    2.    MetLife's statement

Equitable estoppel cannot be applied under these circumstances to require MetLife to pay benefits to plaintiffs. Plaintiffs' claim that they relied to their detriment on representations made in the May 18, 2005, letters from MetLife must fail for at least three reasons. First, any equitable estoppel claim made under state law is clearly preempted. *E.g.*, *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659 (4th Cir. 1986). Second, even if plaintiffs asserted this claim under federal common law of ERISA, the claim would fail because benefits cannot be obtained by estoppel where the plan terms are clear and unambiguous. *E.g.*, *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084 (11th Cir. 1999). Here, the MetLife Summary Plan Description clearly states that an individual must be an "Employee" to be eligible for benefits and defines an Employee as, *inter alia*, one who "is regularly scheduled to work a minimum of 20 hours per week." At no time after MetLife began funding the plan did Mr.

Sabecky meet this requirement. Thus, the clear language of the plan controls. Similarly, equitable estoppel cannot be used as a vehicle to obtain benefits contrary to the terms of a benefit plan. "[A]n estoppel claim cannot result in a payment of benefits that would be inconsistent with the written plan." *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1520 (9th Cir. 1993), citing *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992).

Third, in no case could the plaintiffs meet the basic legal elements of estoppel. They cannot show that any reliance on MetLife's acknowledgment of the beneficiary form from Schwab, after Mr. Sabecky's death, was *reasonable* even if they can prove both actual and detrimental reliance (which MetLife disputes). The acknowledgement letters themselves noted that the claim would be reviewed, and that payments might not be in the amount of the anticipated claims, nor did the letters promise payment (in any amount) in a specified time frame.

3. Schwab's statement

Plaintiffs claim Schwab was negligent in failing to notify the decedent that he had filled out the wrong beneficiary designation form. Plaintiffs seek money damages from Schwab -- they do not seek benefits under 29 U.SC. section 1132(a)(1)(B). The benefits have been paid by LINA to Rebecca Gonzales. The decedent was never a participant in the MetLife Plan and therefore cannot make a claim for benefits under that plan. Plaintiffs are not suing for a breach of fiduciary duty that affects the entire plan as required for a 29 U.S.C. section 113(a)(2) action. Finally, Plaintiffs cannot state a claim under 29 U.S.C. section 1132(a)(3) because claims for money damages, a classic form of legal claim, are not available under that section. For example, in *McMath v. Bank of America*, 2001 U.S. Dist. LEXIS 2805 (N.D. Cal. 2001), plaintiffs claimed that Bank of America was negligent in failing to notify him that he had not signed beneficiary designation forms. Judge Breyer dismissed the action against Bank of America because there was no basis for a claim under ERISA. *See also, Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064 (9th Cir. 2005).

4. <u>Motions</u>:

The Defendants have advised that they perceive that the Plaintiffs have no claim and the Defendants collectively intend to file motions in an effort to circumvent the claims of Plaintiffs

short of trial.

5. <u>Amendment of Pleadings</u>:

No party presently expressing an interest in amending the pleadings. However, the Plaintiffs reserve the right to file an appropriate motion to amend their pleadings based on any modifications necessitated as a result of motions filed by the Defendants herein.

Defendants contend that plaintiffs must either dismiss this matter or attempt to allege a claim under ERISA.

6. <u>Evidence Preservation</u>:

The Defendants have assured that, although activity relevant to this claim is several years old, everything relevant to this claim has been preserved.

7. <u>Disclosures</u>:

The parties have committed to full disclosure by the Case Management Conference date of October 16, 2007. Rule 26 disclosure is anticipated.

8. <u>Discovery</u>:

Plaintiffs will seek to have the Defendants, and each of them, produce what they have by way of files, correspondence, memorandum(s) and other materials relevant to these claims.

It is Defendants' position that, since this matter is governed by ERISA, it is properly decided based only on the administrative record.

9. <u>Class Actions</u>:

None apply.

10. <u>Related Cases</u>:

None are known to apply.

11. <u>Relief</u>:

Plaintiffs seek relief as requested in their Complaint.

12. <u>Settlement and ADR</u>:

Given the comparatively modest amount of the represented total coverage, $58,500, the Plaintiffs and Defendants have expressed an interest in a cost effective early mediation process. Schwab believes discovery should be stayed pending mediation.

13. <u>Consent to Magistrate Judge For All Purposes</u>:

Plaintiffs have their reservation about consenting to Magistrate Judge for all purposes. Defendants have expressed that they are not inclined to similarly make such a consent.

14. <u>Other References</u>:

None known.

15. <u>Narrowing of Issues</u>:

None known.

Defendants contend, and do not believe that it can be reasonably disputed, that this matter is governed by ERISA. Defendants believe that the issues can be narrowed substantially if plaintiffs either dismiss their complaint or attempt to allege a claim under ERISA.

16. <u>Expedited Schedule</u>:

Plaintiffs and Defendants express a desire to mediate this matter as soon as possible.

17. <u>Scheduling</u>:

It is anticipated that the parties shall participate in mediation first. Failing agreement in the mediation process, the Defendants intend to file motions attempting to dismiss the claims of Plaintiffs. Thereafter, the matter will be ready for trial.

18. <u>Trial</u>:

Dependant upon mediation success and outcome of indicated defense motions.

19. <u>Disclosure of Non-Party Interested Entities or Persons</u>:

None known.

LINA has filed a disclosure of Non-Party Interested Entities. Connecticut General Corporation is a parent company of LINA. Connecticut General Corporation is a wholly owned subsidiary of CIGNA Holding Inc. CIGNA Holding Inc. is a wholly owned subsidiary of CIGNA Corporation.

MetLife is a subsidiary of MetLife, Inc., a publicly traded corporation.

Schwab has filed a disclosure of Non-Party Interested Entities. Defendant Charles Schwab & Co., Inc is a 100% owned subsidiary of Schwab Holdings, Inc., which is a 100% owned subsidiary of The Charles Schwab Corp.

1  20.  <u>Other Matters</u>:

2  None known.

3  LINA and Schwab have filed third party complaints for declaratory relief against Rebecca Gonzales.  LINA and Schwab have made repeated attempts to locate and serve Mr. Gonzales.  Recently, LINA and Schwab learned that Ms. Gonzales has an attorney.  LINA contacted counsel and he stated that he believed he would be able to obtain authority from Ms. Gonzales to accept service of the complaint.  Accordingly, LINA and Schwab mailed a copy of the complaint with a waiver of summons.

DATED: October 9, 2007    Respectfully submitted,

<u>/s/ James R. Morgan (as authorized 10/9/07)</u>
JAMES R. MORGAN
Attorney for Plaintiffs, Daniel Toussaint; Mathew Toussaint; Nicole Toussaint

DATED: October 9, 2007    SEDGWICK, DETERT, MORAN & ARNOLD LLP

By:<u>/s/ Cari A. Cohorn</u>
Rebecca A. Hull
Cari A. Cohorn
Attorneys for Defendant
METROPOLITAN LIFE INSURANCE COMPANY

DATED: October 9, 2007    LINER YANKELEVITZ SUNSHINE & REGENSTREIF  LLP

By:<u>/s/ Kim Zeldin (as authorized 10/9/07)</u>
Kim Zeldin
Attorneys for Defendant
CHARLES SCHWAB & CO., INC.

DATED: October 9, 2007    WILSON ELSER MOSKOWITZ EDELMAN & DICKER

By:<u>/s/ Sean P. Nalty (as authorized 10/9/07)</u>
Sean P. Nalty
Attorneys for Defendant
LIFE INSURANCE COMPANY OF AMERICA